J-S08009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER VALE-FELICIANO | : | |
| | : | |
| Appellant | : | No. 1358 MDA 2023 |

Appeal from the Judgment of Sentence Entered July 19, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002537-2020

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:               **FILED: APRIL 1, 2024**

Appellant, Christopher Vale-Feliciano, appeals from the judgment of sentence entered July 19, 2023, as made final by the denial of his post-sentence motion on August 16, 2023.  In this direct appeal, Appellant's counsel has filed both a petition for leave to withdraw as counsel and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We conclude that Appellant's counsel has complied with the procedural requirements necessary to withdraw.  Moreover, after independently reviewing the record, we conclude that the instant appeal is wholly frivolous.  Therefore, we grant counsel's petition for leave to withdraw and affirm Appellant's judgment of sentence.

_____

[*] Former Justice specially assigned to the Superior Court.

In April 2019, an investigation known as Operation Hill Fire sought to uncover the source of the influx of various drugs in and around the city of Harrisburg in Dauphin County, Pennsylvania. A drug organization was ultimately identified and, by way of a confidential informant and then, an undercover officer, Operation Hill Fire began engaging in various controlled purchases of heroin, cocaine, and fentanyl from an individual named Angel Cintron-Cardona. Thereafter, Operation Hill Fire began surveillance of Cintron-Cardon by, *inter alia*, placing "two tracking devices on vehicle[s]," deploying "pole camera[s]" in various areas, engaging in wiretaps, and taking still photographs or videos of Cintron-Cardona, as well as other individuals he met with. N.T. Trial, 4/10/23-4/12/23, at 72-73. Through their investigative efforts, Harrisburg officers learned that Cintron-Cardona obtained his supply of cocaine from Appellant, who "furnished cocaine from [his] residence on 13th Street[, Harrisburg, Pennsylvania]" near Pigeon Alley. ***Id*.** at 84. Ultimately, in April 2020, the officers "executed what is known as Raid Day or the Last Day of the investigation," and executed an arrest warrant for Appellant and a search warrant for Appellant's home, which yielded "a money counter, bulk currency, multiple cell[ular tele]phones, scales and . . . marijuana." ***Id*.** at 40.

Thereafter, Appellant was charged *via* criminal information with multiple offenses. The matter proceeded to a jury trial on April 10, 2023. On April 12, 2023, the jury found Appellant guilty of possession with intent to deliver ("PWID") – cocaine; PWID – heron; conspiracy to commit PWID – cocaine;

conspiracy to commit PWID – heroin; conspiracy to commit PWID – fentanyl; corrupt organizations, dealing in proceeds of unlawful activities, and criminal use of a communication facility.[1]  Appellant filed a post-sentence motion on July 27, 2023, which the trial court denied on August 16, 2023.  This timely appeal followed.

On appeal, Appellant's counsel filed a petition for leave to withdraw and counsel accompanied this petition with an *Anders* brief.  Before reviewing the merits of this appeal, this Court must first determine whether counsel has fulfilled the necessary procedural requirements for withdrawing as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under *Anders*, counsel must satisfy certain technical requirements.  First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous."  *Id.* at 1207. Second, counsel must file an *Anders* brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

[1]  35 Pa.C.S.A. § 780-113(a)(30); 18 Pa.C.S.A. §§ 903, 911(b)(1), 5111(a)(1), and 7512(a), respectively.

*Santiago*, 978 A.2d at 361. Finally, counsel must furnish a copy of the *Anders* brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5; *see also Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the *Anders* procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel. ... [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them") (internal citations omitted). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel complied with all of the above procedural obligations. We must, therefore, review the entire record and analyze whether

this appeal is, in fact, wholly frivolous. Our analysis begins with the claims raised in the **Anders** brief, which are as follows:

1. Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence that Appellant engaged in drug trafficking when he was not found [to be in possession of] any drugs?

2. Whether the trial court erred in accepting the jury's verdict which went against the weight of the evidence [because] the Commonwealth failed to establish that [] Appellant was engaged in drug trafficking?

3. Whether the trial court erred in finding that the Commonwealth presented evidence to support a[n] Offense Gravity Score reflecting over 1000 grams of cocaine?

Appellant's Brief at 4 (superfluous capitalization omitted).

In his first issue, Appellant challenges the sufficiency of the evidence supporting his various convictions. In particular, Appellant contends that, because he was only found to be in possession of marijuana, the Commonwealth failed to present sufficient evidence that he "engaged in a drug trafficking organization." Appellant's Brief at 10.

Our standard of review is as follows:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth [need] not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

- 5 -

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014–1015 (Pa. Super. 2002) (citations omitted).

In Section 780-113 of the Controlled Substance, Drug, Device and Cosmetic Act, PWID is defined as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 Pa.C.S.A. § 780-113(a)(30).

Section 903 of the Crimes Code states:

**(a) Definition of conspiracy**.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903. Importantly, in a case dealing with conspiracy and PWID, "successful proof of a conspiracy makes each co-conspirator fully liable for all of the drugs recovered, without the necessity of proving constructive possession." *Commonwealth v. Perez*, 931 A.2d 703, 709 (Pa. Super. 2007).

The crime of corrupt organizations is defined, in relevant part, as follows:

**§ 911 Corrupt organizations:**

(b) Prohibited activities.—

(1) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise: Provided, however, That a purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issue held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity after such purchase, do not amount in the aggregate to 1% of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer: Provided, further, That if, in any proceeding involving an alleged investment in violation of this subsection, it is established that over half of the defendant's aggregate income for a period of two or more years immediately preceding such investment was derived from a pattern of racketeering activity, a rebuttable presumption shall arise that such investment included income derived from such pattern of racketeering activity.

18 Pa.C.S.A. § 911(b)(1).

The crime of dealing in proceeds of unlawful activities requires proof that, *inter alia*, a "person conducts a financial transaction . . . with knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity." **Id.** at § 5111(a)(1).

Finally, criminal use of a communication facility, requires proof that a

> person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S.A. § 7512(a).

Herein, the Commonwealth presented the testimony of multiple officers who participated in Operation Hill Fire to establish that Appellant was a part of a network of drug traffickers. First, Trooper Shawn Panchik testified about the initial investigation, which identified Cintron-Cardona, and the series of controlled purchases of fentanyl, cocaine, and heroin with an undercover officer. Trooper Panchik also testified that, through the identification of Cintron-Cardona, Operation Hill Fire learned that Appellant, with the assistance of his next-door neighbor, Kevin Ponce-Garcia, provided Cintron-Cardona and others with various narcotics from his residence on 13th Street. N.T. Trial, 4/10/23-4/12/23, at 84. More specifically, Trooper Panchik

explained that, once Appellant received "an order for narcotics" he would reach out to Ponce-Garcia who would subsequently "fulfill that order at [Appellant's] direction." *Id.* at 86. Importantly, footage of their operation, captured *via* a pole camera mounted in Pigeon Alley directly behind Appellant's residence, was introduced into evidence. The video showed Appellant and Ponce-Garcia "meet[ing] at the fence line," talking, and "passing objects back and forth." *Id.* at 87; *see also id.* at 217. On one occasion, footage also showed Appellant, Ponce-Garcia, Cintron-Cardona, and another individual, Jeffrey Pagan-Archeval, in a vehicle, using a scale to weigh a white substance and subsequently departing from the vehicle, each carrying something. *Id.* at 88.

Thereafter, Trooper Ryan Ivancik, testified about an interaction he had with Appellant on February 27, 2020. In particular, Trooper Ivancik stated that, on that day, he conducted a traffic stop of a vehicle operated by Appellant, wherein Ponce-Garcia was a passenger. During the course of this stop, Trooper Ivancik obtained their names, dates of birth, addresses and phone numbers. He stated that Appellant informed him that his telephone number was 717-877-9103. *Id.* at 143. Later, Corporal Kent Ramierz testified about the multiple conversations between Appellant and other individuals obtained *via* wiretapping. Initially, Corporal Ramierz stated that, following Appellant's arrest in April 2020, he confirmed that Appellant was the voice on the telephone calls at the number, 717-877-9103. *Id.* at 177-179. Then, Corporal Ramierz identified and detailed at least 74 different telephone

conversations between February 6, 2020 and March 23, 2020 wherein Appellant, *inter alia*, acknowledged that he possessed various narcotics and discussed the purchase of narcotics from Puerto Rico and subsequent distribution throughout Harrisburg. ***See id***. at 185-211 (identifying Appellant engaging in approximately 74 telephone conversations between February 6, 2020 and March 23, 2020 with, among others, Cintron-Cardona and unknown individuals from Puerto Rico).

Based upon all the foregoing, we agree with counsel's assessment that the Commonwealth presented sufficient evidence to sustain Appellant's various convictions that arose from his participation in a drug trafficking organization.

In his second issue, Appellant claims that the verdict was against the weight of the evidence. Appellant challenges the credibility of the testimony and evidence proffered by the Commonwealth to support his participation in a drug trafficking organization. When considering a challenge to the weight of the evidence offered in support of a criminal conviction, our standard of review is well settled.

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding

all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (quotations omitted), *appeal denied*, 171 A.3d 1286 (Pa. 2017). "To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (citations and internal quotations omitted).

The entirety of Appellant's argument challenges the credibility of the Commonwealth's witnesses' testimony. We conclude that the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence. The jury heard the evidence introduced at trial and was free to determine the weight of the evidence and testimony. It is the fact-finder's duty to assess credibility and we may not substitute our judgement for the jury's findings. Moreover, the evidence was not so tenuous, vague and uncertain that the verdict shocked the conscience of the court. Accordingly, Appellant's weight of the evidence claim fails.

Lastly, Appellant raises a challenge to the discretionary aspects of his sentence. More specifically, Appellant claims that the trial court "erred in sentencing [him] with an offense gravity score [("OGS")] of 13" for his charges

- 11 -

listed at count one, PWID - cocaine, and count two, conspiracy to commit

PWID - cocaine.  Appellant's Brief at 19.

This Court previously explained:

It is well-settled that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011).  Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his[, or her,] appeal as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

An appellant challenging the discretionary aspects of his[, or her,] sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant [] filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

[*Moury*, 992 A.2d] at 170 [(citation omitted)].  We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001).

*Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original

brackets omitted).  A substantial question exists when an appellant presents

a colorable argument that the sentence imposed is either (1) "inconsistent

with a specific provision of the [s]entencing [c]ode" or (2) is "contrary to the

fundamental norms which underlie the sentencing process." ***Commonwealth v. Mastromarino***, 2 A.3d 581, 585 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011).

Instantly, Appellant filed a timely notice of appeal, properly preserved his claims in his post-sentence motion, and included a Rule 2119(f) statement in his brief. Moreover, Appellant's claim that the trial court inappropriately calculated the OGS raises a substantial question for our review. ***See Commonwealth v. Sunealitis***, 153 A.3d 414, 421 (Pa. Super. 2016), *citing* ***Commonwealth v. Archer***, 722 A.2d 203, 210-211 (Pa. Super. 1998).

Appellate review of a trial court's sentencing determination is governed by Section 9781(c) of the Sentencing Code.

> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the [trial] court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable."

***Commonwealth v. Bowen***, 975 A.2d 1120,1123 (Pa. Super. 2009), *citing* 42 Pa.C.S.A. § 9781(c). In reviewing sentencing matters, we are mindful of our well-settled standard of review.

> Sentencing is a matter vested in the sound discretion of the [trial court], and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the [trial] court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill[-]will, or arrived at a manifestly unreasonable decision.

- 13 -

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009) (quotation omitted).

The sentencing guidelines lists the offense gravity scores for various crimes, including PWID and conspiracy to commit PWID. Importantly, Section 303.15 lists the OGS for possessing over 1,000 grams of cocaine as 13. *See* 204 Pa. Code § 303.15. In addition, Section 303.3 states, in relevant part, as follows:

> (3) Convictions for attempt, solicitation, or conspiracy to commit any offense under The Controlled Substance, Drug, Device and Cosmetic Act (35 P.S. § 780-101--§ 780-144) receive the [OGS] of the offense attempted, solicited, or which was the object of the conspiracy.

204 Pa. Code § 303.3(C)(3).

Herein, the Commonwealth presented evidence, in particular, Appellant's telephone conversations, wherein he negotiated or otherwise discussed selling and distributing kilograms, which is 1,000 grams, of cocaine. *See* N.T. Trial, 4/10/23-4/12/23, at 185-211 (identifying Appellant engaging in approximately 74 telephone conversations between February 6, 2020 and March 23, 2020 with, among others, Cintron-Cardona and unknown individuals from Puerto Rico); *see also* N.T. Sentencing, 7/19/23, at 7-8 (the Commonwealth stating that there "was evidence [at trial] o[f] conversations where [Appellant] was talking about drugs in the amounts of kilo[grams] and utilizing amounts akin to $11,000[.00] for half kilo[grams] and $30,000[.00] or more for full kilo[grams]. He was conversing with other kilo-level dealers

- 14 -

and making trips to pick up and distribute these amounts."). In addition, the Commonwealth presented expert testimony further interpreting Appellant's various phone calls and indicting that Appellant was discussing "whole kilograms, which [is] 1,000 grams" of, *inter alia*, cocaine. N.T. Trial, 4/10/23-4/12/23, at 269. Based upon the foregoing, we agree with counsel that the trial court did not abuse its discretion in issuing Appellant's sentence.

We have independently considered the issues raised within counsel's **Anders** brief and we have determined that the claims are frivolous. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is, therefore, wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2024